Susan B. Padove, Senior Trial Attorney
Susan Gradman, Chief Trial Attorney
Division of Enforcement
U.S. Commodity Futures Trading Commission
525 W. Monroe Street, Suite 1100
Chicago, Illinois 60661
Telephone: (312) 596-0544 (Padove)
Telephone: (312) 596-0523 (Gradman)
Facsimile: (312) 596-0714
spadove@cftc.gov
sgradman@cftc.gov

```
____ FILED        ____ RECEIVED
____ ENTERED      ____ SERVED ON
           COUNSEL/PARTIES OF RECORD

        AUG 15 2016

    CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY:_____ DEPUTY
```

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA
# LAS VEGAS DIVISION

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TRADEMASTERS, USA, LLC and MIRKO SCHACKE, an individual,<br><br>Defendants. | C<br><br>**2:16-cv-01938-GMN-NJK**<br><br>COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND PENALTIES UNDER THE COMMODITY EXCHANGE ACT |

The U.S. Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, hereby alleges as follows:

## I.  INTRODUCTION

1.  Between at least June 2013 to the present (the "relevant period"), Defendant Mirko Schacke ("Schacke"), by and through his company, TradeMasters USA, LLC ("TradeMasters") (collectively "Defendants"), solicited members of the public to buy automated futures trading software that he sold under the TradeMasters name. The Defendants solicited

1

and accepted a total of at least $155,626 from at least 36 individuals who purchased this software.

2. The Defendants made and continue to make fraudulent representations to prospective customers when marketing their trading software, including making misrepresentations on the TradeMasters website. The fraudulent representations included, among others: misrepresenting that certain trading results were actual when they were hypothetical, using cherry-picked results that were not representative of customers' actual trading experience, and making false claims of large customer profits resulting from use of the TradeMasters software. Through these misrepresentations, the Defendants have engaged, are engaging, or are about to engage in acts and practices which violate Sections 4b(a)(1)(A) and (C) and 6(c)(1) of the Commodity Exchange Act ("the Act"), 7 U.S.C. §§ 6b(a)(1)(A) and (C) and 9(1) (2012) and Regulation 180.1, 17 C.F.R. § 180.1 (2014).

3. Also during the relevant period, TradeMasters and Schacke managed trading for at least two customers and were, therefore, acting as a commodity trading advisor ("CTA") and an associated person ("AP") of a CTA, respectively, without the benefit of registration, in violation of Sections 4m(1) and 4k(3) of the Act, 7 U.S.C. §§ 6m(1) and 6k(3) (2012).

4. TradeMasters and Schacke, while acting as a CTA and an AP of a CTA respectively, also violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1), by making misrepresentations when selling the TradeMasters software, and TradeMasters violated Regulation 4.41, 17 C.F.R. § 4.41, by failing to provide disclosures that CTAs are required to give when referring to testimonials in any advertising or sales literature.

5. At all relevant times, Schacke was acting within the course and scope of his employment, agency or office with TradeMasters. Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015), TradeMasters is liable for Schacke's violations of the Act and Regulations.

6. At all relevant times, Schacke directly or indirectly controlled TradeMasters, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting TradeMasters' violations of the Act. Pursuant to Section 13(b) of the Act, 7 U.S.C. §13c(b)

(2012), Schacke is therefore liable for TradeMasters' violations to the same extent as TradeMasters.

7. Accordingly, pursuant to Section 6c of the Act, the Commission brings this action to enjoin such acts and practices, and to compel compliance with the provisions of the Act and Regulations.

8. In addition, the Commission seeks restitution, disgorgement, civil monetary penalties, a permanent trading ban and such other equitable relief as the Court may deem necessary and appropriate. Given their pattern of fraudulent activity, unless restrained and enjoined by this Court, the Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, or in similar acts and practices.

## II. JURISDICTION AND VENUE

9. The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012). Section 6c of the Act authorizes the Commission to seek injunctive relief in district court against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

10. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the transactions, acts, practices, and courses of business alleged to have violated the Act have occurred within this District and the Defendant TradeMasters is located in this District.

## III. THE PARTIES

11. **Plaintiff** United States Commodity Futures Trading Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 et seq. (2012), and the Regulations promulgated under it, 17 C.F.R. §§ 1 et seq. (2014).

12. **Defendant** Mirko Schacke, a/k/a "Mick" Schacke, is an individual who resides in Antioch, California. Schacke is, and at all times during the relevant period was the sole owner

3

and manager of TradeMasters and, therefore, possessed and exercised control over TradeMasters. Schacke has never been registered with the Commission in any capacity.

13. **Defendant** TradeMasters USA, LLC is a Nevada limited liability company. The firm was registered as a limited liability company on August 7, 2013, and, at all relevant times, has maintained a business address in Henderson, Nevada. TradeMasters is wholly owned and managed by Schacke, and during the relevant period Schake hired and supervised at least two salesmen who solicited public customers to purchase TradeMasters' automated trading software. TradeMasters has never been registered with the Commission in any capacity.

### IV.   STATEMENT OF FACTS

#### A.   Statutory Background

14. Section 1a(12) of the Act, 7 U.S.C. § 1a(12) (2012), defines a Commodity Trading Advisor ("CTA"), in relevant part, as any person who, for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market.

15. An AP of a CTA is defined, in relevant part, as any natural person associated with a CTA "as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of a client's or prospective client's discretionary account, or (ii) the supervision of any person or persons so engaged." 17 C.F.R. § 1.3(aa)(3).

#### B.   Background and Overview of TradeMasters' Business

16. In mid-2013, Schacke bought a commodity futures trading software package off of the shelf, white labelled the product and called it his own TradeMasters trading software.

17. In June 2013, Schacke began marketing the TradeMasters product to the public through a website he developed for TradeMasters, www.trademastersusa.com, which is still active. Schacke also uses various social media devices such as YouTube and Facebook to market the TradeMasters software.

18. Schacke sold his TradeMasters trading software via a "software license" within a range from $1,500 to $20,000. Schacke also charged customers a recurring "monthly access fee" of $250 to $1,000, which entitled customers to "system setup," "training activities and updates" and ongoing personal trading support from Schacke.

19. During the relevant period, Schacke sold software licenses to, and collected monthly access fees from, at least 36 customers for a combined total of at least $155,626.

20. At various times from July 2013 through March 2016, Schacke maintained several personal trading accounts at futures commission merchants ("FCMs") registered with the Commission. Schacke used the TradeMasters software to varying degrees when trading for his personal accounts. In the aggregate, Schacke's personal accounts had a negative 22.95% rate of return for 2013, a negative 31.73% rate of return for 2014, a positive 281.47% rate of return for 2015 and a negative 34.78% rate of return through March 2016. Overall, the accounts earned a net profit of $9,025.52 on a net investment of approximately $43,000 from July 2013 through June 2016.

C. **Defendants' Fraudulent Solicitations**

21. In or around June 2013, Schacke set up a website for the purpose of soliciting public customers to purchase his TradeMasters trading software. Additionally, during 2015, Schacke created YouTube videos touting the profitability and ease of use of the TradeMasters trading software, which he distributed to customers via emails and an internet link during the relevant time period.

22. In an effort to bolster the credibility of the TradeMasters trading software, Schacke published performance results on the website claiming large profits. Although the website contains a hypothetical disclaimer, Schacke told customers that the performance results reflected on the website were actual trading. Schacke and TradeMasters have no support for these profit claims.

23. The TradeMasters website and YouTube videos made the following claims about the past profitability of the TradeMasters trading system:

    a. a customer gained more than 500% in 2014;

    b.  a customer gained more than 40% "in only 10 weeks;"

    c.  "most users manage to generate a monthly income of 5 to $10,000;"

    d.  some customers "quickly reached [income of] 15 to $30,000 each and every month."

23. These claims are false because no customer achieved these results using the TradeMasters software and Schacke admitted that they are not based on actual trading.

24. Schacke used paid actor testimonials on his website, including a misleading purported "real customer story" claiming that a customer made a 300% return in just three months. Schacke paid this purported "real customer," who was described as a "stay at home mom," to give a video testimonial. Schacke did not disclose that this was a paid testimonial and that this individual was not a customer and had never been a customer. Rather, the customer's results in this video were actually "cherry-picked" results from Schacke's personal proprietary trading account.

25. Additionally, Defendants use the expression "set it and forget it" on the TradeMasters website to describe the simplicity of the TradeMasters software product. The website explains that the TradeMasters product is a "100% automated" trading robot that executes trades for a customer's trading account and it does not require any customer intervention to monitor and adjust the trading activity after initially entering "stops, targets and triggers." However, the TradeMasters software is not fully automated as claimed and requires customer intervention and "coaching" by Schacke. Customers paid TradeMasters a monthly access fee to receive "coaching," which fee was not disclosed on the website, and Schacke, in return, would tell customers how to determine which markets to trade, quantity and timing parameters for their trades and how "to get out of a trade early because of a loss or a gain."

26. Beginning in at least the summer of 2013, Schacke held weekly webinars with TradeMasters software users to recap the week's trading performance, instruct customers about day trading and provide information about releases of new software. The website promoted the webinars and stated that this instruction would be presented by "head coaches" with "more than 2 decades of active day trading" experience. Schacke was the only "coach" ever associated with

6

TradeMasters and he had no futures trading experience prior to marketing the TradeMasters software in June 2013.

27. At the webinars or "Sunday Hangouts" as Schacke called them, Schacke touted the profitable returns he was achieving using the TradeMasters software and said that the trading performance in his account as well as the trading performance on the website was based on actual live trading rather than hypothetical trading. Further, Schacke has no support for the trading results that he published on the TradeMasters website.

28. Defendants also sent emails to customers containing a trading performance track record, which they represented to be actual trades, but were instead hypothetical.

29. Specifically, in or around July 2013, a TradeMasters salesman sent an email to a customer containing an excel spreadsheet called "Money Management – Trade Plan." The salesman told the customer that the excel spread sheet contained trading results for the TradeMasters software. The trading results in the spreadsheet were categorized by market and showed the results for each day in each market. The spreadsheet showed that the TradeMasters software was generating steady profits. The salesman told the customer that the profits reported in the spreadsheet were from actual trades placed by the TradeMasters software in a real futures account.

30. Additionally, in March 2014, a TradeMasters' salesman sent a customer an excel file, which the salesman said contained trading performance for the TradeMasters software for January 2014 reflected in "points" with each point roughly equal to a one percent rate of return. The salesman said that the performance contained in the file was the actual trading performance of the TradeMasters software despite its labeling as hypothetical. The performance reported in the email showed that the TradeMasters software was achieving daily returns as high as 151.2 points and earned an average daily return of more than 10 points. Statements attached to the email, which were represented to be actual trading pursuant to the TradeMasters software, showed that an account earned net profits over $1,900 for the time period.

31. By the end of 2014, Schacke began marketing a new software product, but continued to publish results on his website to prospective customers that resulted from his old software product without disclosing that he had changed software products.

### D. Schacke Acted as an AP and TradeMasters acted as a CTA Without Registration

32. During the relevant period, some TradeMasters customers complained to Schacke that his TradeMasters trading software was not yielding the profitable results that were advertised and that they were, instead, losing money.

33. In response to at least two of the complaining customers, Schacke agreed to try to recover the losses they experienced by personally executing trades for their trading accounts as an additional service for the same TradeMasters' monthly access fee. At Schacke's direction, the customers gave Schacke and TradeMasters their trading accounts' user name and password log-in credentials, and Schacke proceeded to trade for those accounts on behalf of TradeMasters. In so doing, TradeMasters acted as a CTA and Schacke acted as an AP of TradeMasters. However, Schacke's discretionary trading for one of those customers was similarly unprofitable.

### E. TradeMasters Failed to Provide Required Disclosures Concerning Testimonials

34. Defendants displayed client testimonials on the TradeMasters website. Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3), requires that certain disclosure language be "prominently disclose[d]" when a CTA displays testimonials.

35. As of February 13, 2016, the TradeMasters website contained at least five testimonials from purported customers who claimed that they made gains after using the TradeMasters software to manage their trading accounts.

36. Defendants did not disclose anywhere on the TradeMasters website "that the testimonial may not be representative of the experience of other clients," or prominently disclose "that the testimonial is no guarantee of future performance or success" as Regulation 4.41 requires. Instead, the Defendants included a generic disclosure that did not mention testimonials and that was not in proximity to the testimonials, but was on the bottom of a separate webpage that did not contain any testimonials in violation of Regulation 4.41(a)(3).

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE
### VIOLATIONS OF SECTION 4b(a)(1)(A) and (C) OF THE ACT: FRAUD BY MISREPRESENTATIONS

37. The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

38. Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C § 4b(a)(1)(A), (C) (2012), make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person:

> (A) to cheat or defraud or attempt to cheat or defraud the other person;
>
> \*\*\*
>
> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or . . . with the other person[.]

39. Defendants knowingly or recklessly made material misrepresentations to induce members of the public to purchase commodity futures trading software to use for commodity futures trading, including but not limited to misrepresenting that:

   a. the TradeMasters software was fully automated and could result in profitable trading for customers without "coaching" from Schacke;
   b. hypothetical trading profits were actual trading profits;
   c. that TradeMasters' "coaches" have more than 2 decades of active day trading experience when Schacke was the only "coach" and had no futures trading experience prior to marketing the TradeMasters software in June 2013;
   d. a customer gained more than 500% in 2014;
   e. a customer gained more than 40% "in only 10 weeks;"

  f. "most users manage to generate a monthly income of 5 to $10,000;"

  g. some customers "quickly reached [income of] 15 to $30,000 each and every month;

  h. a 300% return in just three months was earned by a "real customer;"

  i. a video testimonial came from a purported "real customer" when the testimonial was from a paid actor and actually reported selected results from Schacke's proprietary account; and

  j. reported profits were earned with new software Schacke began marketing at the end of 2014 when they were actually earned with the old TradeMasters software no longer made available to prospective customers.

40. These material misrepresentations violated and continue to violate Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2012).

41. Schacke, acting both individually and as agent and principal of TradeMasters, engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to, the use of interstate wires for the transfer of funds and other electronic communication devices.

42. The foregoing acts, misrepresentations and omissions of Schacke occurred within the scope of his employment, office or agency with TradeMasters. Therefore, TradeMasters is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2015).

43. Schacke directly or indirectly, controlled TradeMasters and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting TradeMasters' violations of Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2012). Schacke is therefore liable for these violations pursuant to Section 13(b) of the Act, 17 U.S.C. § 13c(b).

44. Each act of misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2012).

## COUNT TWO
## VIOLATION OF SECTION 4m(1) OF THE ACT:
## FAILURE TO REGISTER AS A COMMODITY TRADING ADVISOR

45. The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

46. Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), makes it unlawful for any CTA, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CTA.

47. TradeMasters acted as CTA when for compensation or profit it exercised discretionary trading authority over customer trading accounts and executed trades for those accounts while failing to register with the Commission as a CTA in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

48. Schacke directly or indirectly, controlled TradeMasters and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting TradeMasters' violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012). Schacke is therefore liable for these violations pursuant to Section 13(b) of the Act, 17 U.S.C. § 13c(b).

## COUNT THREE
## VIOLATION OF SECTION 4k(3) OF THE ACT: FAILURE TO REGISTER AS AN ASSOCIATED PERSON OF A COMMODITY TRADING ADVISOR

49. The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

50. Section 4k(3) of the Act, 7 U.S.C. § 6k(3) (2012), in relevant part, makes it unlawful for a person to be associated with a CTA as a partner, officer, employee, consultant, or agent, or a person occupying a similar status or performing similar functions, in any capacity which involves the solicitation of a client's or prospective client's discretionary account unless such person is registered with the Commission under this Act as an AP of such CTA. Section 4k(3) of the Act further makes it unlawful for a CTA to permit such a person to become or remain associated with the CTA in such a capacity if the CTA knew or should have known the person was not registered as an AP.

51. Schacke acted as an AP of TradeMasters during the scope of his employment with TradeMasters, in that he solicited at least two customer's discretionary accounts without the benefit of registration with the Commission as an AP of TradeMasters, in violation of Section 4k(3) of the Act, 7 U.S.C. § 6k(3) (2012).

52. TradeMasters knew or should have known that Schacke was acting as an AP by soliciting clients' or prospective clients' discretionary accounts without the benefit of registration, but permitted him to act as its AP in violation of Section 4k(3) of the Act, 7 U.S.C. § 6k(3) (2012).

## COUNT FOUR
## VIOLATIONS OF SECTION 4*o* OF THE ACT:
## FRAUD BY A COMMODITY TRADING ADVISOR AND ASSOCIATED PERSON

53. The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

54. Defendant TradeMasters acted as a CTA when, for compensation or profit, it exercised discretionary trading authority over customer trading accounts and executed trades in those accounts and Defendant Schacke acted as an AP of TradeMasters when, during the course of his employment with TradeMasters, he solicited the discretionary accounts of at least two clients.

55. Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), makes it unlawful for a CTA, or an AP of a CTA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly

   (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

   (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

56. Defendants knowingly or recklessly made material misrepresentations to induce members of the public to purchase commodity futures trading software for members of the public to use for commodity futures trading, including but not limited to misrepresenting that:

12

    a. the TradeMasters software was fully automated and could result in profitable trading for customers without "coaching" from Schacke;

    b. hypothetical trading profits were actual trading profits;

    c. TradeMasters' "coaches" have more than 2 decades of active day trading experience when Schacke was the only "coach" and had no futures trading experience prior to marketing the TradeMasters software in June 2013;

    d. a customer gained more than 500% in 2014;

    e. a customer gained more than 40% "in only 10 weeks;"

    f. "most users manage to generate a monthly income of 5 to $10,000;"

    g. some customers "quickly reached [income of] 15 to $30,000 each and every month;

    h. a 300% return in just three months was earned by a "real customer;"

    i. a video testimonial came from a purported "real customer" when the video was actually reported results from Schacke's proprietary account; and

    j. reported profits were earned with new software Schacke began marketing at the end of 2014 when they were actually earned with the old TradeMasters software.

57. TradeMasters and Schacke, while acting as a CTA and an AP of a CTA respectively, by using the mails or instrumentalities of interstate commerce: (i) employed devices, schemes, or artifices to defraud clients or prospective clients; and (ii) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon clients, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012).

58. Schacke, acting both individually and as agent and principal of TradeMasters, and TradeMasters engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to, the use of interstate wires for the transfer of funds and other electronic communication devices.

59. Schacke directly or indirectly, controlled TradeMasters and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting TradeMasters' violations

13

of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012).  Schacke is therefore liable for these violations pursuant to Section 13(b) of the Act, 17 U.S.C. § 13c(b).

60. The foregoing fraudulent acts, misrepresentations, and other unlawful conduct of Schacke occurred within the scope of his employment, office, or agency as agent or principal of TradeMasters.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), Defendant TradeMasters is liable for Schacke's violations of Sections 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012).

61. Each act of fraudulent solicitation, during the relevant period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012).

## COUNT FIVE
### VIOLATIONS OF SECTION 6(c)(1) OF THE ACT AND REGULATION 180.1(a): FRAUD BY MANIPULATIVE OR DECEPTIVE DEVICES OR CONTRIVANCES

62. The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

63. Section 6(c)(1) of the Act, 7 U.S.C. §9(1)(2012), provides, in relevant part, "[i]t shall be unlawful for any person, directly or indirectly, to use or employ or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate."

64. Regulation 180.1(a), 17 C.F.R. 180.1(a) (2015), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly:

> In connection with any . . . contract of sale of any commodity in interstate commerce. . . to intentionally or recklessly:  (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person. . .

14

65. Defendants knowingly or recklessly made material misrepresentations to induce members of the public to purchase commodity futures trading software to use for commodity futures trading, including but not limited to misrepresenting that:

 a. the TradeMasters software was fully automated and could result in profitable trading for customers without "coaching" from Schacke;

 b. hypothetical trading profits were actual trading profits;

 c. that TradeMasters' "coaches" have more than 2 decades of active day trading experience when Schacke was the only "coach" and had no futures trading experience prior to marketing the TradeMasters software in June 2013;

 d. a customer gained more than 500% in 2014;

 e. a customer gained more than 40% "in only 10 weeks;"

 f. "most users manage to generate a monthly income of 5 to $10,000;"

 g. some customers "quickly reached [income of] 15 to $30,000 each and every month;

 h. a 300% return in just three months was earned by a "real customer;"

 i. a video testimonial came from a purported "real customer" when the testimonial was from a paid actor and actually reported selected results from Schacke's proprietary account; and

 j. reported profits were earned with new software Schacke began marketing at the end of 2014 when they were actually earned with the old TradeMasters software no longer made available to prospective customers.

66. Schacke, acting both individually and as agent and principal of TradeMasters, engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to, the use of interstate wires for the transfer of funds and other electronic communication devices.

67. By this conduct, the Defendants violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Regulation 180.1(a), 17 C.F.R. § 180.1(a)(2015).

68. The foregoing acts, misrepresentations and omissions of Schacke occurred within the scope of his employment, office or agency with TradeMasters. Therefore, TradeMasters is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2015).

69. Schacke directly or indirectly, controlled TradeMasters and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting TradeMasters' violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. 180.1(a) (2015). Schacke is therefore liable for these violations pursuant to Section 13(b) of the Act, 17 U.S.C. § 13c(b).

70. Each manipulative or deceptive device or contrivance used or employed during the relevant period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the Act, 7 U.S.C. §9 (1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015).

### COUNT SIX
### VIOLATIONS OF 17 C.F.R. § 4.41:
### FAILURE TO PROVIDE REQUIRED DISCLOSURES

71. The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

72. Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3) makes it unlawful for any CTA to refer to any testimonial, unless the advertisement or sales literature providing the testimonial prominently discloses, in pertinent part: (i) that the testimonial may not be representative of the experience of other clients; and (ii) that the testimonial is no guarantee of future performance or success.

73. Through the conduct alleged in paragraphs 34-36, TradeMasters, while acting as a CTA, referred to testimonials on the TradeMasters website without prominently disclosing the required statement, in violation of 17 C.F.R. § 4.41(a)(3).

74. Schacke directly or indirectly, controlled TradeMasters and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting TradeMasters' violations

of Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3). Schacke is therefore liable for these violations pursuant to Section 13(b) of the Act, 17 U.S.C. § 13c(b).

75.  Each failure to prominently disclose the required statements during the relevant period, including those specifically alleged herein, constitutes a separate and distinct violation of 17 C.FR. § 4.41.

## VI.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to the Court's inherent equitable powers, enter:

A.  An order finding that Defendants violated Sections 4b(a)(1)(A) and (C), 4k(3), 4m(1), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), 6k(3), 6m(1), 6o(1) and 9(1) (2012) and Regulations 4.41 and 180.1(a), 17 C.F.R. §§ 4.41 and 180.1(a) (2015);

B.  An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct that violates Sections 4b(a)(1)(A) and (C), 4k(3), 4m(1), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), 6k(3), 6m(1), 6o(1) and 9(1) (2012) and Regulations 4.41 and 180.1(a), 17 C.F.R. §§ 4.41 and 180.1(a) (2015);

C.  An order of permanent injunction prohibiting Defendants, and any of their agents, servants, employees, successors, assigns, attorneys, and persons acting in active concert or participation with Defendants, including any successor thereof, from, directly or indirectly:

(1)  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

(2)  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. §1.3(yy) (2015) for their own personal account or for any account in which they have a direct or indirect interest;

(3)  Having any commodity interests traded on their behalf;

17

(4) Controlling or directing the trading for, or on behalf of, any other person or entity, whether directly or indirectly, by power of attorney or otherwise, in any account involving commodity interests;

(5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(6) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)(2015); and

(7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2015)), agent or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015).

D. An order directing Defendants, as well as any successors thereof, to make full disgorgement of all benefits received including, but not limited to salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, as a result of the acts and practices constituting violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

E. An order requiring Defendants, as well as any successors thereof, to make full restitution to every person or entity whose funds Defendants received, or caused another person or entity to receive, as a result of the acts or practices that constitute violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

F. An order directing Defendants, as well as any successors thereof, to pay a civil monetary penalty, plus post-judgment interest, for each violation of the Act and Regulations described herein, in the amount of the greater of: (i) $140,000 for each violation committed; or (ii) triple Defendants' monetary gain for each violation committed;

18

G.   An order requiring Defendants to pay costs and fees, as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

H.   An order providing such other and further equitable or remedial ancillary relief as the Court may deem appropriate.

Dated: August 15, 2016

Respectfully submitted,

/s/ Susan B. Padove
Susan B. Padove
Senior Trial Attorney
Illinois ARDC # 0341649
Indiana Attorney # 11477-98

Susan Gradman
Chief Trial Attorney
Illinois ARDC # 6225060

Attorneys for Plaintiff
Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0544 (Padove)
(312) 596-0523 (Gradman)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)
E-mail:  spadove@cftc.gov;
         sgradman@cftc.gov