# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### LAS VEGAS DIVISION

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TRADEMASTERS, USA, LLC and MIRKO SCHACKE, an individual,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Civil Action No.  2:16-CV-01938-GMN-NJK**

[PROPOSED] **ORDER GRANTING PLAINTIFF CFTC'S MOTION FOR SUMMARY JUDGMENT AGAINST SCHACKE, DEFAULT JUDGMENT AGAINST TRADEMASTERS and IMPOSING A PERMANENT INJUNCTION AND OTHER RELIEF**

This matter comes before the Court on Plaintiff's combined filing of a Motion for Summary Judgment against Defendant Mirko Schacke ("Schacke") and Plaintiff's Motion for Default Judgment against Defendant TradeMasters, USA, LLC ("TradeMasters").  On August 15, 2016, Plaintiff, United States Commodity Futures Trading Commission ("Commission" or "CFTC"), filed a Complaint against Defendants TradeMasters, USA, LLC ("TradeMasters") and Mirko Schacke ("Schacke") (collectively "Defendants"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and Commission Regulations, 17 C.F.R. §§ 1 *et seq.* (2015).

Schacke answered the Complaint on September 14, 2016.  After receiving briefs and conducting an evidentiary hearing, this Court entered an order of Preliminary Injunction on September 22, 2016. (Docket No. 37)  Neither Schacke's Answer nor any other evidence presented to the Court creates a genuine issue of material fact regarding any of the allegations set forth in the Complaint.

Defendant TradeMasters was served with a copy of the Summons and Complaint on August 24, 2016.  TradeMasters has failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12.  Upon the Commission's motion, the Clerk entered a default against TradeMasters on November 4, 2016. (Docket No. 42)  As such, the well-pleaded allegations of Plaintiff's Complaint are taken as true as against TradeMasters.

The Court has reviewed and carefully considered the Complaint, the Plaintiff's Motions

for Summary Judgment and Default Judgment, Statement of Uncontested Facts and Memorandum of Points and Authorities in Support of Plaintiff's Motions, including the Joint Appendix of Exhibits and the entire record in this case, and the Court being otherwise advised in the premises, it is hereby:

**ORDERED** that the Commission's Motions for Summary Judgment against Defendant Schacke, Default Judgment against Defendant TradeMasters, and Requests for entry of a Permanent Injunction, Disgorgement and a Civil Monetary Penalty against both Defendants are **GRANTED** in all respects.  Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment against both Defendants and for a Permanent Injunction, Disgorgement and a Civil Monetary Penalty ("Order") pursuant to Section 6c and 6d of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

# I.   FINDINGS OF FACT

**THE COURT FINDS:**

**A.    The Parties**

1.     Plaintiff, Commodity Futures Trading Commission, is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations promulgated under it, 17 C.F.R. §§ 1 *et seq.* (2014).

2.     Defendant Trade Masters USA, LLC is a Nevada limited liability company.  The firm was registered as a limited liability company on August 7, 2013, and has maintained a business address in Henderson, Nevada.  TradeMasters is wholly owned and managed by co-Defendant Schacke, and during the relevant period Schake hired and supervised at least one salesman who solicited public customers to purchase TradeMasters' automated trading software. Trade Masters has never been registered with the Commission in any capacity.

3.      Defendant Mirko Schacke, a/k/a "Mick" Schacke, is an individual who resides in Antioch, California.  Schacke is, and was the sole owner and manager of TradeMasters and, therefore, possessed and exercised control over TradeMasters.  Schacke has never been registered with the Commission in any capacity.

**B.      Defendants' Fraudulent Solicitations**

4.      In mid-2013, Schacke bought a commodity futures trading software package off of the shelf, white labelled the product and called it his own TradeMasters trading software.  He began marketing the TradeMasters product to the public through a website he developed, www.trademastersusa.com, which remained active until mid-September 2016.  Schacke also used various social media devices such as YouTube and Facebook to market the TradeMasters software.  Schacke sold his TradeMasters trading software via a "software license" within a range from $1500 to $20,000.  Schacke also charged customers a recurring "monthly access fee" of $250 to $1,000, which entitled customers to "system setup," "training activities and updates," and ongoing personal trading support from Schacke.  Schacke sold software licenses to, and collected monthly access fees from, 39 customers for a combined total of $168,626.

5.      At various times from July 2013 through March 2016, Schacke maintained several personal trading accounts at futures commission merchants ("FCMs") registered with the Commission.  Schacke used the TradeMasters software to varying degrees when trading for his personal accounts.  In the aggregate, Schacke's personal accounts had a negative 23.77% rate of return for 2013, a negative 19.00% rate of return for 2014, a positive 266.47% rate of return for 2015 and a negative 24.87% rate of return through March 2016.  Overall, the accounts had a net profit of $8,121.51 on a net investment of approximately $43,000 from July 2013 through March 2016.

6.      When selling the TradeMasters software, Schacke published performance results on the TradeMasters website claiming large profits.  Schacke told customers that the performance results reflected on the website were actual trading but Schacke and TradeMasters have no support for these profit claims.

7.      The Defendants knowingly and recklessly made material misrepresentations or attempted to deceive members of the public they were soliciting to buy his TradeMasters software and he did so with scienter, including by misrepresenting on the TradeMasters website and by other means that:

     a.  the TradeMasters software was fully automated and could result in profitable trading for customers without "coaching" from Schacke;

     b.  hypothetical trading profits were actual trading profits;

     c.  that TradeMasters' "coaches" have more than 2 decades of active day trading experience when Schacke was the only "coach" and had no futures trading experience prior to marketing the TradeMasters software in June 2013;

     d.  a customer gained more than 500% in 2014;

     e.  a customer gained more than 40% "in only 10 weeks";

     f.  "most users manage to generate a monthly income of 5 to $10,000";

     g.  some customers "quickly reached [income of] 15 to $30,000 each and every month";

     h.  a 300% return in just three months was earned by a "real customer";

     i.  a video testimonial came from a purported "real customer" when the testimonial was from a paid actor who reported selected results from Schacke's proprietary account; and

j.   reported profits were earned with new software Schacke began marketing at the end of 2014 when they were actually earned with the old TradeMasters software no longer made available to prospective customers.

**C.   TradeMasters acted as a CTA and Schacke acted as an AP**

8.   Section 1a(12) of the Act, 7 U.S.C. § 1a(12) (2012), defines a Commodity Trading Advisor ("CTA"), in relevant part, as any person who, for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market.

9.   Regulation 1.3(aa)(3), 17 C.F.R. § 1.3(aa)(3), defines an associated person ("AP"), as any natural person associated with a CTA "as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of a client's or prospective client's discretionary account, or (ii) the supervision of any person or person so engaged."

10.   Schacke continuously provided technical support to customers who were using the TradeMasters software by sending an email or posting online the daily or weekly settings for the markets being traded.  Customers took the trade settings and applied them to their account without knowing what the settings meant or why Schacke had recommended them.

11.   At least two TradeMasters customers complained to Schacke that the TradeMasters trading software was not yielding the profitable results that were advertised and that they were, instead, losing money.  Schacke agreed to try to recover the losses they experienced by personally executing trades for their trading accounts as an additional service for the same TradeMasters' monthly access fee.  At Schacke's direction, the customers gave Schacke and TradeMasters their trading accounts' user name and password log-in credentials,

including in one instance actually giving Schacke his computer, and Schacke traded for those customers' accounts.  Schacke's IP address was the location used to enter trades for one of those customers' accounts.

12.     Schacke traded for a third customer with whom he had struck a deal to pay Schacke a percentage of the profits the customer earned while Schacke was personally executing trades for him.

**D.     TradeMasters Failed to Provide Required Disclosures Concerning Testimonials**

13.     TradeMasters displayed client testimonials on the TradeMasters website.  As of February 13, 2016, the TradeMasters website contained at least five testimonials from purported customers who claimed that they made gains after using the TradeMasters software to manage their trading accounts.  TradeMasters did not disclose anywhere on the TradeMasters website "that the testimonial may not be representative of the experience of other clients," or prominently disclose "that the testimonial is no guarantee of future performance or success."  Instead, the only disclaimer appearing on the website did not mention testimonials and was not located in proximity to the testimonials, but was on the bottom of a separate webpage that did not contain any testimonials.

## II.     <u>CONCLUSIONS OF LAW</u>

**A.     Jurisdiction and Venue**

14.     This Court has jurisdiction over the subject matter of this action and Defendants pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

15.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Defendant TradeMasters resides in this District and the acts and practices in violation of the Act have occurred within this District.

**B.      Defendants Violated Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 4b(a)(1)(A) and (C) (2012)**

16.     Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 4b(a)(1)(A), (C)(2012), makes it unlawful for any person, in or in connection with any order to make, or the making of any contract of sale of any commodity for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of, or with, any other person:

(A)  to cheat or defraud or attempt to cheat or defraud the other

person;

***

(C)  willfully to deceive or attempt to deceive the other person by any

means whatsoever in regard to any order or contract or the disposition

or execution of any order or contract, or in regard to any act of

agency performed, with respect to any order or contract for or . . .

with the other person[.]

17.     TradeMasters knowingly or recklessly made material misrepresentations to induce members of the public to purchase commodity futures trading software to use for commodity futures trading, including but not limited to misrepresenting that:

a.   the TradeMasters software was fully automated and could result in profitable

trading for customers without "coaching" from Schacke;

b.   hypothetical trading profits were actual trading profits;

7

c. that TradeMasters' "coaches" have more than 2 decades of active day trading experience when Schacke was the only "coach" and had no futures trading experience prior to marketing the TradeMasters software in June 2013;

d. a customer gained more than 500% in 2014;

e. a customer gained more than 40% "in only 10 weeks";

f. "most users manage to generate a monthly income of 5 to $10,000";

g. some customers "quickly reached [income of] 15 to $30,000 each and every month;

h. a 300% return in just three months was earned by a "real customer";

i. a video testimonial came from a purported "real customer" when the testimonial was from a paid actor and actually reported selected results from Schacke's proprietary account; and

j. reported profits were earned with new software Schacke began marketing at the end of 2014 when they were actually earned with the old TradeMasters software no longer made available to prospective customers.

18. These material misrepresentations violated Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2012).

**C.    TradeMasters Violated Section 4m(1) of the Act by Failing to Register as a Commodity Trading Advisor**

19. Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), makes it unlawful for any CTA, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CTA.

20. TradeMasters acted as a CTA when, for compensation or profit, it exercised discretionary trading authority over customer trading accounts and executed trades for those

accounts, while failing to register with the Commission as a CTA in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

**D.      Schacke Violated Section 4k(3) of the Act by Failing to Register as an Associated Person of a Commodity Trading Advisor**

21.      Section 4k(3) of the Act, 7 U.S.C. § 6k(3) (2012), in relevant part, makes it unlawful for a person to be associated with a CTA as a partner, officer, employee, consultant, or agent, or a person occupying a similar status or performing similar functions, in any capacity which involves the solicitation of a client's or prospective client's discretionary account unless such person is registered with the Commission under this Act as an AP of such CTA.  Section 4k(3) of the Act further makes it unlawful for a CTA to permit such a person to become or remain associated with the CTA in such a capacity if the CTA knew or should have known the person was not registered as an AP.

22.      Schacke acted as an AP of TradeMasters during the scope of his employment with TradeMasters, in that he solicited customer's discretionary accounts without the benefit of registration with the Commission as an AP of TradeMasters, in violation of Section 4k(3) of the Act, 7 U.S.C. § 6k(3) (2012).

**E.      Defendants Violated Section 4o of the Act by Committing Fraud by a Commodity Trading Advisor and by an Associated Person**

23.      Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), makes it unlawful for a CTA, or an AP, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

(A)  to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B)   to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or

prospective client or participant.

24.    Defendants knowingly or recklessly made material misrepresentations to induce members of the public to purchase commodity futures trading software for members of the public to use for commodity futures trading, including but not limited to the misrepresentations set forth in paragraph 17 (a) – (j).

a.    the TradeMasters software was fully automated and could result in profitable trading for customers without "coaching" from Schacke;

b.    hypothetical trading profits were actual trading profits;

c.    that TradeMasters' "coaches" have more than 2 decades of active day trading experience when Schacke was the only "coach" and had no futures trading experience prior to marketing the TradeMasters software in June 2013;

d.    a customer gained more than 500% in 2014;

e.    a customer gained more than 40% "in only 10 weeks";

f.    "most users manage to generate a monthly income of 5 to $10,000";

g.    some customers "quickly reached [income of] 15 to $30,000 each and every month;

h.    a 300% return in just three months was earned by a "real customer";

i.    a video testimonial came from a purported "real customer" when the testimonial was from a paid actor and actually reported selected results from Schacke's proprietary account; and

j.    reported profits were earned with new software Schacke began marketing at the end of 2014 when they were actually earned with the old TradeMasters software no longer made available to prospective customers.

25.      TradeMasters, while acting as a CTA, and Schacke, while acting as an AP, by using the mails or instrumentalities of interstate commerce:  (i) employed devices, schemes, or artifices to defraud clients or prospective clients; and (ii) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon clients, in violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012).

**F.      Defendants Violated Section 6(c)(1) of the Act and Regulation 180.1(a) by Committing Fraud Through the Use of Manipulative or Deceptive Devices or Contrivances**

26.      Section 6(c)(1) of the Act, 7 U.S.C. §9(1)(2012), provides, among other things, that it is unlawful for any person "to use or employ . . .  in connection with  . . . a contract of sale of any commodity in interstate commerce. . .  any manipulative or deceptive device or contrivance, in contravention of [Commission rules and regulations]."

27.      Regulation 180.1(a), 17 C.F.R. 180.1(a) (2015), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly:

> In connection with any  . . . contract of sale of any commodity in interstate commerce. . . to intentionally or recklessly:  (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person. . .

28.      Defendants knowingly or recklessly made material misrepresentations to induce members of the public to purchase commodity futures trading software to use for commodity futures trading, including but not limited to the misrepresentations  set forth in paragraph 17(a) – (j).

a.   the TradeMasters software was fully automated and could result in profitable trading for customers without "coaching" from Schacke;

b.   hypothetical trading profits were actual trading profits;

     c.   that TradeMasters' "coaches" have more than 2 decades of active day trading experience when Schacke was the only "coach" and had no futures trading experience prior to marketing the TradeMasters software in June 2013;

     d.   a customer gained more than 500% in 2014;

     e.   a customer gained more than 40% "in only 10 weeks;"

     f.   "most users manage to generate a monthly income of 5 to $10,000;"

     g.   some customers "quickly reached [income of] 15 to $30,000 each and every month;

     h.   a 300% return in just three months was earned by a "real customer;"

     i.   a video testimonial came from a purported "real customer" when the testimonial was from a paid actor and actually reported selected results from Schacke's proprietary account; and

     j.   reported profits were earned with new software Schacke began marketing at the end of 2014 when they were actually earned with the old TradeMasters software no longer made available to prospective customers.

29.    By this conduct, Defendants violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015).

**G.    TradeMasters Committed Violations of 17 C.F.R. § 4.41 by Failing to Provide Required Disclosures**

30.    Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3) makes it unlawful for any CTA to refer to any testimonial, unless the advertisement or sales literature providing the testimonial prominently discloses, in pertinent part:  (i) that the testimonial may not be representative of the experience of other clients; and (ii) that the testimonial is no guarantee of future performance or success.

31.    TradeMasters, while acting as a CTA, referred to testimonials on the TradeMasters website without prominently disclosing the required statement, in violation of 17 C.F.R. § 4.41(a)(3).

**H.    Derivative Liability**

32.    Schacke directly or indirectly, controlled TradeMasters and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting TradeMasters' violations as alleged in the Complaint.  Schacke is therefore liable for these violations pursuant to Section 13(b) of the Act, 17 U.S.C. § 13c(b).

33.    Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016) provide that the "act, omission, or failure of any official, agent, or other person acting for any [ . . . ] corporation [. . . ] within the scope of his employment or office shall be deemed the act, omission, or failure of such [. . . ] corporation . . ."

34.    Because Schacke committed acts which constitute the alleged violations while acting on behalf of TradeMasters and because these acts were within the scope of his employment with, and operation of, TradeMasters, TradeMasters is liable for Schacke's conduct that constitute the violations alleged in the Complaint.

## III.    ORDER FOR RELIEF

35.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

**IT IS HEREBY ORDERED THAT:**

36.    The Commission's Motion for Summary Judgment against Defendant Schacke, Motion for Default Judgment against Defendant TradeMasters and for the Imposition of a

Permanent Injunction, Disgorgement and a Civil Monetary Penalty Against Defendants is **GRANTED**.

**IT IS HEREBY ORDERED** that:

A.    **Permanent Injunction**

37.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), defendant TradeMasters is permanently restrained, enjoined and prohibited from directly or indirectly:

a.   Cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in violation of Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2012);

b.   Intentionally or recklessly using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; making, or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Commission Regulation 180.1(a), 17 C.F.R. § 180.1(a)(2016);

c.   While acting as a CTA, employing any device, scheme, or artifice to defraud any client or prospective client, or engaging in any transaction, practice or course of

business which operates as a fraud or deceit upon any client or prospective client in violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012);

d. Failing to register as a CTA in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012); and

e. Failing to provide and prominently display required disclosures in connection with the use of testimonials in advertisements or sales literature in violation of Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3) (2016).

38.     Defendant TradeMasters is also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § la(40) (2012), including, but not limited to, trading for themselves or others;

b. Entering into any transactions involving "commodity interests" (as that term is defined in regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2016) for its own personal account or for any account in which it has a direct or indirect interest;

c. Having any commodity interests traded on its behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration

or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016); and/or

g. Acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016).

39.    Defendant TradeMasters is also permanently restrained, enjoined and prohibited from directly or indirectly:

a. educating or advising any other person or entity about the suitability of engaging in any transactions involving commodity interests, including, but not limited to, trading through the use of any computer software program;

b. using any internet websites to advertise, market, promote or offer for sale any transactions involving commodity interests and related services, including, but not limited to, any automated commodity futures trading software and the website identified as:  www.trademastersusa.com;

c. seeking registration for any domain names for any internet websites to advertise, market, promote or offer for sale any transactions involving commodity interests and related services including, but not limited to, the website identified as: www.trademastersusa.com;

d. using Facebook to advertise, market, promote or offer for sale any transactions involving commodity interests and related services including, but not limited to, the "TradeMasters USA" Facebook page; and

    e.   using YouTube videos to advertise, market, promote or offer for sale any transactions involving commodity interests and related services, including, but not limited to, any automated commodity futures trading software.

**B.    Disgorgement**

40.    Defendants TradeMasters and Schacke shall pay disgorgement, jointly and severally, in the amount of *one-hundred-sixty-eight-thousand-six-hundred and twenty-six dollars* ($168,626), plus post-judgment interest, within thirty (30) days of the date of entry of this Order ("Disgorgement Obligation").  Post-judgment interest shall accrue on the Disgorgement Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. §1961 (2012).

41.    To effect payments of the Disgorgement Obligation and the distribution of any disgorgement payments to Defendants' customers, the Court appoints the National Futures Association ("NFA"), a self-regulatory organization regulated by the CFTC, as Monitor ("Monitor").  Because the Monitor is acting as an officer of the Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, except those involving fraud.

42.    Defendants shall make Disgorgement Obligation payments under this Order to the Monitor in the name "TradeMasters Disgorgement Fund" and shall send such Disgorgement Obligation payments by electronic funds transfer, or by U.S. postal money order certified check, bank cashier's, or bank money order, to a location specified by the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under cover letter that identifies the payment and the name and docket number of this proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of

payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

43.     The Monitor shall oversee the Disgorgement Obligation and shall distribute any funds collected *pro rata* to Defendants' customers identified by the CFTC, or may defer such distribution until such time as the Monitor deems appropriate.  In the event that the amount of Disgorgement Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to Defendants' customers is impractical, the Monitor may, in its discretion, treat such disgorgement payments as civil monetary payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth below.

44.     The Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Disgorgement Obligation payments.  Defendants shall execute any documents necessary to release funds that it has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Disgorgement Obligation.

45.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Center, 1155 21st Street, NW, Washington, D.C. 20581.

46.     The amounts payable to each customer shall not limit the ability of any customer from proving in a separate action that a greater amount is owed by Defendants or any other

person or entity, and nothing herein shall be construed to limit or abridge the rights of any customer that exist under state or common law.

47.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each of Defendants' customers who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce this Order to obtain satisfaction of any portion of his share of the Disgorgement Obligation that has not been paid by Defendants to ensure Defendants' continued compliance with any provision of this Order and to hold Defendants in contempt for any violations of any provision of this Order.

**C.     Civil Monetary Penalty**

48.     Defendants TradeMasters and Schacke shall pay a civil monetary penalty, jointly and severally, in the amount of *five-hundred-and four-thousand dollars* ($504,000), plus post-judgment interest, within thirty (30) days of the date of the entry of this Order (the "CMP Obligation").  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

49.     Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
ATTN: Accounts Receivables
DOT/FAA/MMAC/AMZ-341
CFTC/CPSC/SEC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
(405) 954-7262 office
(405) 954-1620 fax
nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her

successor at the address above to receive payment instructions and shall fully comply with those

instructions.

**D.      Provisions Related to Monetary Sanctions**

50.      Partial Satisfaction:  Any acceptance by the Commission or the Monitor of any

partial payment of Defendants' Disgorgement Obligation or CMP Obligation shall not be

deemed a waiver of their obligation to make further payments pursuant to Order, or a waiver of

the Commission's right to seek to compel payment of any remaining balance.

**E.      Miscellaneous Provisions**

51.      If any provision of this Order or if the application of any provision or

circumstance is held invalid, then the remainder of this Order and the application of the provision

to any other person or circumstance shall not be affected by the holding.

52.      Defendants shall not transfer, or cause others to transfer, funds or other property

to the possession or control of any other person or entity for the purpose of concealing such

funds from this Court or the Commission, until the CMP Obligation set forth above has been

satisfied in full.

53.      All notices required by this Order shall be sent certified mail, return receipt

requested.  Notices to the Commission shall be sent to the Regional Counsel, Division of

Enforcement, U.S. Commodity Futures Trading Commission, 525 W. Monroe Street, Suite 1100,

Chicago, Illinois 60661.  All such notices to the Commission shall reference the name and docket number of this action.  Further, until such time as Defendants satisfy in full their Disgorgement Obligation and CMP Obligation as set forth in this Order, Defendants shall provide written notice to the Commission by certified mail of any change to its telephone number and mailing address with ten (10) calendar days of the change(s).

54.  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action.  This Order shall be interpreted and enforced according to the Federal Rules of Civil Procedure, the Local Rules for the District Court of Nevada, and all provisions of the Act and Commission Regulations relating to or referring to the obligations hereunder.

55.  Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Order shall be binding upon Defendants and upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

56.  The Clerk is **directed** to enter judgment accordingly, terminate any pending motions and deadlines, and close this action.

**IT IS SO ORDERED** at Las Vegas, Nevada on this _____ day of _____, 2016.

_____
Gloria M. Navarro, Chief Judge
UNITED STATES DISTRICT COURT