Susan B. Padove, Senior Trial Attorney
Susan Gradman, Chief Trial Attorney
Division of Enforcement
U.S. Commodity Futures Trading Commission
525 W. Monroe Street, Suite 1100
Chicago, Illinois 60661
Telephone:  (312) 596-0544 (Padove)
Telephone:  (312) 596-0523 (Gradman)
Facsimile:  (312) 596-0714
spadove@cftc.gov
sgradman@cftc.gov

*Attorneys for the Plaintiff, US CFTC*

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA
# LAS VEGAS DIVISION

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>              Plaintiff,<br><br>      v.<br><br>TRADE MASTERS, USA, LLC and MIRKO SCHACKE, an individual,<br><br>              Defendants. | **Civil Action No. 2:16-CV-01938-GMN-NJK**<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT SCHACKE AND REQUEST FOR A PERMANENT INJUNCTION AND OTHER RELIEF** |

# TABLE OF CONTENTS

I. BACKGROUND ..................................................................................................1

II. SCHACKE DOES NOT GENUINELY DISPUTE HIS
    FRAUDULENT CONDUCT .................................................................................2

III. SCHACKE IS LIABLE FOR REGISTRATION VIOLATIONS..................................4

IV. SCHACKE IS DIRECTLY LIABLE FOR HIS MISCONDUCT...................................6

V. SCHACKE IS LIABLE AS A CONTROL PERSON .......................................................7

VI. CFTC'S REQUEST FOR A PERMANENT INJUNCTION IS WARRANTED..........8

VII. CFTC'S REQUESTED PERMANENT TRADING BAN, DISGORGEMENT
     AND CIVIL MONETARY PENALTY ARE APPROPRIATE ........................................8

   A. Permanent Trading and Registration Bans are Appropriate..........................................9

   B. The Calculation and Award of Disgorgement is Proper ................................................9

   C. A Substantial Civil Monetary Penalty is Appropriate ..................................................10

VIII. CONCLUSION ...............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F. 3d 474, 480 (9th Cir. 2000)
 (citations omitted) ..................................................................................................2

*CFTC v. Baragosh,* 278 F. 3d 319 (4th Cir. 2002) ..........................................................3

*CFTC v. British Am. Commodity Options,* 560 F. 2d 135, 142 (2d Cir. 1977) ..............5

*CFTC v. CIS Commodities, LLC, et al.,* 2014 WL" 3368325 (D. Nev. 2014) ..........9, 10

*CFTC v. JBW Capital, LLC,* 812 F. 3d 98, 106 (1st Cir. 2016) ......................................5

*CFTC v. Levy,* 541 F. 3d 1102, 1113 (11th Cir. 2008) ...................................................9

*CFTC v. Sidoti,* 178 F. 3d 1132, 1137 (11th Cir. 1999) .................................................8

*CFTC v. Wilshire Investment Management Corp.* 531 F. 3d 1339 (11th Cir. 2008).......9

*CFTC v. Wilson,* 19 F. Supp. 3d 352, 360-361 (D. Mass. 2014).....................................5

*F.T.C. v. Stefanchik ,* 559 F. 3d 924 (9th Cir. 2009)......................................................3

*In re Dewese,* 469 F.R. 314 (E.D. Ark. 2012) ...............................................................6

*In re James Giampietro,* 317 B.R. 841, 847 (D. Nev. 2004)..........................................7

*In re Kim, Park and Houston System Trading, LLC,* [1999-2000 Transfer Binder]  Comm. Fut.
 L. Rep. (CCH) ¶ 28,176 (CFTC June 29, 2000), 2000 CFTC Lexis 157 .................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) .............2

*Miller v. CFTC,* 197 F. 3d 1227, 1236 (9th Cir. 1999)..................................................10

*Rodriguez v. AT&T Services, Inc.,* 2015 WL 6163428 at *7 (D. Nev. 2015)................6

*SEC v. Warren,* 534 F. 3d 1368, 1370 n. 2 (11th Cir. 2008) .......................................10

**Statutes**

7 U.S.C. § 13c(b)(2012)..................................................................................................7

7 U.S.C. §§ 1 *et seq.* (2012).............................................................................................1

**Rules**

Fed. Rule Civ. Proc. 56(c) ..............................................................................................2

**Treatises**

*54 C.J.S. Limited Liability Companies § 50* .................................................................6

**Regulations**

17 C.F.R. §§ 1 *et seq.* (2015) ..................................................................................................1

## I.    BACKGROUND

The Plaintiff, U.S. Commodity Futures Trading Commission ("CFTC" or "Commission"), filed a Motion for Summary Judgment against Defendant Mirko Schacke, a/k/a "Mick" Schacke ("Schacke") ("SJ Motion") on December 20, 2016 [Doc. No. 47].[1] Schacke filed a response brief, *pro se*, on January 10, 2017 [Doc. No. 63]. The CFTC now files its Reply Memorandum in support of its SJ Motion and seeks the entry of a Permanent Injunction and Other Relief in the form of monetary sanctions against Schacke.

The CFTC's complaint charges Defendants with violating the Commodity Exchange Act ("CEA" or "Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1 *et seq.* (2015).   More specifically, the CFTC alleges that Schacke and his co-Defendant TradeMasters USA, LLC ("TradeMasters") (collectively "Defendants") fraudulently solicited and accepted $168,626 from 39 public customers to purchase TradeMasters' automated commodity futures trading software.  The CFTC alleges that the Defendants made misrepresentations to these public customers about past trading results and used false and misleading customer testimonials to support their claims of profitable trading.   Further, although not registered as a commodity trading advisor ("CTA") or an associated person ("AP") of a CTA, the CFTC alleges that Defendants exercised discretionary trading authority over at least four customer trading accounts and that TradeMasters also failed to provide required disclosures concerning testimonials it used to solicit customers.

The CFTC's complaint charges Schacke with the following:   (Count One) – fraud in violation of Section 4b(a)(1)(A) and (C) of the Act; (Count Five) – fraud by manipulative or deceptive devices or contrivances in violation of Section 6(c)(1) of the Act and Regulation 180.1(a); (Count Three) – failing to register as an AP of a CTA in violation of Section 4k(3) of the Act;  (Count Four) fraud by an AP of a CTA in violation of Section 4*o*(1) of the Act.  The

---

[1] On December 21, 2016, the Plaintiff also filed a Motion for Default Judgment against co-Defendant TradeMasters USA, LLC ("TradeMasters") [Doc. No.  55].  TradeMasters has neither appeared in this action nor responded to the Motion for Default Judgment filed against it by the CFTC and that motion is ripe for decision by this Court.

1

complaint also charged TradeMasters (Count Two) with failing to register as a CTA in violation of Section 4m(1) of the Act and with (Count Six) failing to provide required disclosures in violation of Regulation 4.41(a)(3).  Further, the complaint alleges that Schacke is liable as a controlling person for TradeMasters' violations of the Act pursuant to Section 13(b) of the Act, because he did not act in good faith or knowingly induced, directed or indirectly, the act or acts constituting the violations.

## II. SCHACKE DOES NOT GENUINELY DISPUTE HIS FRAUDULENT CONDUCT

The CFTC's opening brief established the absence of a genuine issue of fact on each issue material to this case of fraud.  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F. 3d 474, 480 (9th Cir. 2000) (citations omitted) (affirmed summary judgment where the moving party established the absence of a genuine issue of fact on each issue material to its case and the opposing party only offered a declaration lacking sufficient probative evidence that genuine issues remained).  The CFTC submitted a statement of undisputed facts supporting its fraud charges against the Defendants, replete with many examples of material false representations of profits and fabricated customer testimonials.  For instance, Schacke makes the false claim on the TradeMasters' website and on his YouTube videos that "most [of his software] users manage to generate a monthly income of 5 to $10,000."  *Ex. 1 ¶ 27; Ex. 5 at 286:17-24; Ex. 9 at 50:12-51:2.*  This claim, for instance, was never disputed by Schacke and is illustrative of Schacke's acts of fraudulent solicitation.

After the CFTC satisfied its initial burden, the burden shifted to Schacke to establish that a genuine issue of material fact exists. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), the Court discussed these burdens as follows:  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  The Court in *Matsushita* continued:  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'* Fed. Rule Civ. Proc. 56(c)."  Schacke has failed to satisfy his burden.

2

Schacke's response to the CFTC's SJ Motion makes no attempt to refute any of the specific allegations of fraud detailed by the CFTC. Rather, while wholly ignoring the CFTC's evidence, he asserts platitudes such as that the average software price to consumers of $5000 was "appropriate for the services provided." He also makes the unsupported assertion that his customers understood "the risks involved" and only signed the purchase agreement for the trading software "after being presented with all the information necessary to make a legally informed binding agreement." However, the CFTC has established that the information Schacke provided to his customers about the performance of TradeMasters' software program is false. As the Court in *F.T.C. v. Stefanchik*, 559 F. 3d 924 (9th Cir. 2009) stated (affirming summary judgment where the non-moving party failed to offer competent evidence in the form of contrary declarations, sworn affidavits or testimony to refute the claim that marketing materials were fraudulent): "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."

Schacke attempts to deflect attention from his fraudulent conduct by quoting at length from the customer agreement specifying that "there are no guarantees and trading is risky." [Doc. No. 63; at p. 2] Schacke's assertions do not raise a genuine issue of a disputed material fact on the issue of fraud. Even assuming that the trading software product was reasonably priced or that purchasers were contractually bound to an agreement acknowledging risks this would not defeat a finding that they were otherwise fraudulently solicited to buy the software. It is self-evident that prospective customers cannot make a purchase, with a full and balanced understanding of the risks, if representations made to them of past profitable trading are falsified. Indeed, misrepresentations about profit potential which arise when past profitability claims are falsified "go to the heart of a customer's investment decision and are therefore material as a matter of law." *CFTC v. Noble Wealth Data Information Servs. Inc.,* 90 F. Supp. 2d 676, 686 (D. Md. 2000), *aff'd in relevant part, rev'd in part sub nom. CFTC v. Baragosh,* 278 F. 3d 319 (4th Cir. 2002).

3

The CFTC has also provided evidence that Schacke had the requisite scienter to commit fraud. For instance, Schacke used misleading "cherry-picked" results to promote his software by only giving reports for months when he had winning trades while ignoring his losing months. The uses of such "cherry-picked" results are inherently misleading because they are not accurately representative of overall trading history. *Ex. 9 at 54:15-55:18.* Even more compelling are the instances where Schacke fabricated customers' identities to make it appear that they were achieving profitable results through actual trading by using the software. *Ex. 5 at 262:11-263:14; 200:17-201:4; 203:5-6; 241:7-18; Ex. 9 at 56:5-18.* Schacke's explanation about using a fake customer testimonial on the TradeMasters' website from someone he identified as "George C." who purportedly gained "more than 40% in only 10 weeks" confirms that Schacke knew of the fraud. Schacke admitted that he never received "George C.'s" statement corroborating these results and said that the testimonial "was supposed to be deleted" from his website. *Ex. 5 at 197:24-198:5* Similarly, Schacke claimed on the TradeMasters' website that customer "Gene Fisher" gained more than 500% in 2014. However, when confronted about Fisher's claimed profits, Schacke testified that this customer's name was only a "placeholder" and that the page on the website was not supposed to be viewable by the public. *Ex. 5 at 202:13-21; 200:24-201:4.* Schacke's response brief ignores the evidence of scienter and simply states that "it was never Defendant Schacke's intent to defraud customers." [Doc. 63; at p. 8] Schacke's self-serving statement does not create a dispute of material facts on the issue of scienter.

### III. SCHACKE IS LIABLE FOR REGISTRATION VIOLATIONS

The CFTC's SJ Motion offers evidence that Schacke, acting on behalf of TradeMasters, exercised discretionary trading authority over four customers' trading accounts without TradeMasters registering as a commodity trading advisor ("CTA") and Schacke registering as an associated person ("AP") of a CTA as required. The CFTC's evidence of violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1), includes sworn statements from customers that Schacke

4

personally traded for them and the declaration of the CFTC's investigator who explained that these customers' trades were executed on a computer located near Schacke's residence. At the Preliminary Injunction ("PI") hearing, Schacke denied executing trades for any customers, although he apparently has now abandoned that position. *Ex. 9 at 92:9* Nor does Schacke dispute that registration is required for one to exercise discretionary trading authority over another's account. Rather, Schacke's defense is that he purportedly called both the National Futures Association ("NFA") and the CFTC in November 2015 and that the CFTC told him "that no registration would be necessary." Presumably Schacke is thus suggesting that although he did not register, he did not have scienter in failing to do so.

     Schacke's skeletal assertions are unreliable on their face as he provided no corroboration for these alleged phone calls (e.g., emails or other correspondence) nor can he even identify the exact dates or parties consulted. *Ex. 9 at 82:14-83:10* Further, the law is well-settled that a failure to register under the Act is subject to strict liability making scienter irrelevant. *CFTC v. JBW Capital, LLC,* 812 F. 3d 98, 106 (1st Cir. 2016). In *JBW Capital*, the Court of Appeals confirmed the district court's order concluding that the Act's registration requirements do not contain a "state of mind" limitation and were instead subject to strict liability. The district court reasoned that there is a "flat prohibition . . . against using the facilities of interstate commerce to give commodity advice unless registered," and that "violations of § 6m alone are sufficient to warrant the granting of an injunction. *CFTC v. British Am. Commodity Options,* 560 F. 2d 135, 142 (2d Cir. 1977)." *CFTC v. Wilson,* 19 F. Supp. 3d 352, 360-361 (D. Mass. 2014). The *British American* Court, in holding that "registration is the kingpin" of the CFTC's regulatory framework, also held that 'Congress has specifically found that the activities of commodity trading advisors affect substantially the transactions on commodity markets . . . and it has made

1 the policy decision that the conduct of business by unregistered advisors in not in the public

2 interest.' *Id."* *CFTC v. Wilson,* 19 F. Supp. 3d at 360-361.

### IV. SCHACKE IS DIRECTLY LIABLE FOR HIS MISCONDUCT

Schacke does not dispute that he was the individual who actually made the false representations to prospective customers, including by virtue of posting the fraudulent content on TradeMasters' website.  As such, Schacke is directly liable for the violations alleged by the CFTC.  However, Schacke argues that because TradeMasters is a Nevada limited liability company ("LLC"), the allegations against him personally should be dismissed.  That argument is unfounded because the protection afforded to an LLC does "not shield the owner or agent from liability for conduct that would justify a finding of fraud against that person individually.  *See 54 C.J.S. Limited Liability Companies § 50* ("Members or managers are not protected from personal liability for their own wrongs, such as torts. . . )." *In re Dewese,* 469 F.R. 314 (E.D. Ark. 2012).

More precisely, Schacke, as the only member of his limited liability company, TradeMasters, should be held liable under an alter ego theory. In *Rodriguez v. AT&T Services, Inc.,* 2015 WL 6163428 at *7 (D. Nev. 2015) (holding that an individual who owned a business was bound by the business' consent to an arbitration provision), the Court stated: [i]n order to hold an individual liable under an alter ego theory, the plaintiffs must show:  (1) the corporation was influenced and governed by the person asserted to be the alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and (3) the facts are such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanctions a fraud or promote injustice." (citations omitted)  The Court in *Rodriguez,* 2015 WL 6163428 at *7, also reasoned that "the alter ego doctrine may be invoked regardless of whether the business

6

sought to be pierced is a corporation, partnership, or proprietorship."[2]  In this case, Schacke satisfies all three criteria as he governed the activities of TradeMasters, was its sole owner and it would be unjust to permit him to avoid responsibility for fraud by adhering to the corporate fiction. Thus, TradeMasters' status as a limited liability company does not shield Schacke from liability for his own fraud.

## V.     SCHACKE IS LIABLE AS A CONTROL PERSON

Schacke is also liable as a controlling person for TradeMasters' violations of the Act pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b)(2012).  Schacke states that he "never represented himself as the company owner;" rather he says that he "only represented himself as an executive manager." Schacke's assertion about what he may have "represented" to the public regarding his status with TradeMasters discounts the undisputed fact that Schacke was, in fact, the sole owner and manager of TradeMasters.   As such, Schacke was responsible for all of TradeMasters' operations.  *Ex. 1¶ 14 (Ex. A at pp. 2, 8, 9, 12-15); Ex. 9 at 33:18-34:7; Ex. 2 ¶ 6; Ex. 5 at 98:5-7; Ex. 3 ¶¶ 2, 3; Ex. 6 ¶ 2.*    Because he managed the day-to-day operations of TradeMasters, Schacke had the requisite control over the operations of TradeMasters to trigger controlling person liability.  Schacke does not dispute that he was the actor who performed the alleged wrongful acts on behalf of TradeMasters, including failing to properly register under the Act, sending fraudulent emails to customers and posting false statements on the TradeMasters' website.  As such, he also indisputably had "actual or constructive knowledge of the core activities that constitute the violations at issue and allowed them to continue."  As such, Schacke did not act in good faith and knowingly induced, directly or indirectly, the acts constituting

---

[2] *In re James Giampietro,* 317 B.R. 841, 847 (D. Nev. 2004), the Court concluded that Nevada courts would apply the same common law standards for alter ego liability to members of limited liability companies that they have placed upon shareholders of corporations.

7

TradeMasters' violations. Schacke is therefore liable for this fraudulent conduct as a controlling person of TradeMasters.

### VI. CFTC'S REQUEST FOR A PERMANENT INJUNCTION IS WARRANTED

A permanent injunction is warranted when there is a "likelihood of future violations." *CFTC v. Sidoti,* 178 F. 3d 1132, 1137 (11th Cir. 1999). The evidence here compels permanent injunctive relief because of the ongoing nature of Schacke's conduct. Schacke continued to solicit new customers for many months after he became aware of the CFTC's investigation into his activities and until the eve of the PI hearing in this case. Further, this fraudulent conduct was especially egregious because it spanned more than two years and victimized 39 public customers. Despite having had ample opportunity to do so at the PI hearing, and more recently in his response brief to this SJ Motion, Schacke has never acknowledged that his conduct was wrongful in any way. He also has done nothing that would provide any assurances that the violations will not occur in the future. Rather, he is now seeking to have the relief against him limited, in part, to only temporary trading and registration bans of 5 years rather than the permanent bans sought by the CFTC. [Doc. 63 at. p. 8]. Because Schacke clearly intends, by virtue of his proposal, to again engage in commodity futures trading activities, including for others, the Court should be especially concerned about the likelihood of future violations and impose a permanent injunction against him.

### VII. CFTC'S REQUESTED PERMANENT TRADING BAN, DISGORGEMENT AND CIVIL MONETARY PENALTY ARE APPROPRIATE

In its SJ Motion, the CFTC seeks: (1) a permanent trading ban, (2) disgorgement of $168,626 in ill-gotten gains (the sum of monies paid by customers to Defendants for purchase of the TradeMasters software license and ongoing fees), and, (3) a civil monetary penalty of $505, 878, which is the lesser of statutorily authorized sums and is equivalent to three times the monetary gain. This relief is measured and appropriate given the scope of Schacke's misconduct and is far less than the maximum relief that the CFTC could have requested.

Schacke, in response, proposes that he will not challenge a finding of fraud by this Court if the Court imposes lesser sanctions and penalties than those sought by the CFTC. Specifically,

8

Schacke proposes that the Court limit trading and registration bans to a period of five years, "restitution" to $50,000 and a civil monetary penalty of $35,000.  As the only support for his proposal, Schacke maintains that the imposition of these lesser penalties would not cause what otherwise will be "financial devastation" to him and his family.  Schacke's proposed reduction in the penalties sought against him in this case is not supported by the governing law in this area and should not be adopted as alternative relief.

A.      **Permanent Trading and Registration Bans are Appropriate**

Given the egregious nature of the fraudulent conduct personally engaged in by Schacke, there is no reasonable basis to suggest that he should ever be allowed to trade commodity futures again in the future, for himself or others.  Schacke has neither expressed remorse for his misconduct nor has he admitted any wrongdoing whatsoever.  In that context, and, more significantly, given the core violations of the Act committed by Schacke, the permanent trading and registration bans are warranted.  *See, e.g., CFTC v. Wilshire Investment Management Corp.* 531 F. 3d 1339 (11th Cir. 2008); *CFTC v. CIS Commodities, LLC, et al.,* 2014 WL" 3368325 (D. Nev. 2014).

B.      **The Calculation and Award of Disgorgement is Proper**

The award of disgorgement in the amount of $168, 626 is challenged by Schacke who proposes, instead, that "restitution" be limited to $50,000.  The CFTC is not seeking restitution in this proceeding, although it does seek to have the amounts collected as disgorgement distributed, *pro rata*, to Schacke's defrauded customers.  Schacke does not dispute that he pocketed the sum of $168,626 by selling software licenses and user fees to customers.  Rather, he suggests, without any support in the record, that he will suffer financial ruin if the amount is not reduced.  However, even if this disgorgement award would be devastating to Schacke (and perhaps even consequently to his family), the law is clear that the calculation of disgorgement should be an amount equal to the extent of the defendants' unjust enrichment.  *CFTC v. Levy,* 541 F. 3d 1102, 1113 (11th Cir. 2008).  Further, Schacke ignores the case law previously cited by the CFTC confirming that the defendant's inability to pay the amount of disgorgement is

9

immaterial when making the determination of how much he should be ordered to pay. As the Court in *SEC v. Warren,* 534 F. 3d 1368, 1370 n. 2 (11th Cir. 2008) reasoned in explaining the rationale for disregarding the defendant's ability to pay disgorgement: "[a] contrary rule would allow con artists to escape disgorgement liability by spending their ill-gotten gains."

C.      **A Substantial Civil Monetary Penalty is Appropriate**

Schacke cites *In re Kim, Park and Houston System Trading, LLC,* [1999-2000 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 28,176 (CFTC June 29, 2000), 2000 CFTC Lexis 157, as support for his plea to reduce all of the sanctions against him, including the proposed civil monetary penalty of $505,878. Schacke's precedent is unavailing. In the *In re Kim* administrative case settled seventeen years ago, the CFTC filed an action against several respondents. The penalties imposed against one of the respondents singled out by Schacke, John Ki Park, included restitution of $35,000, a civil penalty of $35,000 and a 6-month temporary trading and registration ban (not the $50,000 restitution and 5 year ban cited by Schacke). [Doc. No. 63 at p. 2] However, a key distinction in the facts of the *Kim* case is that Park received a lesser penalty than the other respondents because he was not the primary fraud-doer as is the case with Schacke. Rather, Park only aided and abetted the conduct of those respondents who directly violated the antifraud provisions of the Act by fraudulently soliciting commodity customers, namely Seungho Kim and HST. Kim and HST were ordered to pay restitution of $86,498, a stiffer civil penalty of $50,000, and received permanent registration and trading bans. The relevant case law provides a basis for more substantial penalties to be imposed here. The proposed civil penalty of $505,878 should be imposed against Schacke the principal fraud-doer in this case as it is "appropriate to the gravity of [the] offenses and sufficient to act as a deterrent." *Miller v. CFTC,* 197 F. 3d 1227, 1236 (9th Cir. 1999). *See, e.g., CFTC v. CIS Commodities, LLC, et al.,* 2014 WL 3368325 (D. Nev. 2014) (ordered a civil monetary penalty of $596,500 in case involving the misappropriation of $175,000 of public customers' funds).

# VIII. CONCLUSION

For the foregoing reasons, the CFTC requests that the Court issue an order granting summary judgment against Schacke. Further, the CFTC requests that the Court issue an order granting a permanent injunction against Schacke, disgorgement of $168,626 and a civil monetary penalty of $505,878.

Dated: January 24, 2017                    Respectfully submitted,


**/s/Susan B. Padove**
Susan B. Padove
Senior Trial Attorney
spadove@cftc.gov
Illinois A.R.D.C. No. 3127019
Indiana No. 11477-98

Susan Gradman
Chief Trial Attorney
sgradman@cftc.gov
Illinois A.R.D.C. No. 6225060___

Scott R. Williamson
Deputy Regional Counsel
swilliamson@cftc.gov
Illinois A.R.D.C. No. 06191293

Rosemary Hollinger
Regional Counsel
rhollinger@cftc.gov
Illinois A.R.D.C. No. 3123647

Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0544 (Padove)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)

# PROOF OF SERVICE

I hereby certify that on January 24, 2017, I caused a copy of the following:

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT SCHACKE AND REQUEST FOR A PERMANENT INJUNCTION AND OTHER RELIEF**

to be served upon:

Mirko Schacke, individually, and on behalf of TradeMasters USA, LLC,
2422 Larkin Ct.
Antioch, CA 94531

By UPS overnight courier and by email to: mcschacke@yahoo.com and trademasterusa@gmail.com.

/s/Susan B. Padove
Susan B. Padove
Senior Trial Attorney
spadove@cftc.gov
Illinois A.R.D.C. No. 3127019

Attorney for Plaintiff
Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0544 (Padove)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)